Case 15-2445, Gary Watkins v. Jodie DeAngelo, Borough Argument, not to exceed 15 minutes per side. Mr. Linus Banghart-Linn, when ready for the appellate. Thank you, Your Honors, and may it please the Court, Linus Banghart-Linn, Assistant Attorney General of the State of Michigan, on behalf of the Respondent Board and Board of Respect, I'm going to request a reversal. I'm going to sort of two minutes hold them up. This Court should reverse the District Court's willingness to grant habeas relief for either of two reasons. First, the claims are untimely, and should not have been addressed by the District Court. And second, the claims lack merit to the multiple layers of evidence that apply to them that the District Court failed to grapple with. So I'm going to ask you to make, maybe you need to adjust the microphone, keep your voice up, sometimes I can't see. I'm sorry about that, I'll try to focus on that. Thank you. Before I get into the arguments, I would like to request that this Court do something in deciding this case, and that is to rule on the timeliness claim. And I know that might sound redundant, of course, we've brought it before you, so why wouldn't you rule on it? But I know that sometimes the Court will say, well, the petitioner needs to prevail on both of them, so if one of them is easy, we don't need to get to the other. We're not saying there's anything improper about that. That is, of course, fine. The reason we're requesting ruling on the timeliness issue, though, is because the District Court decided, in this case, to only rule on one of the 16 case claims before, and then sort of hold the other five back, so that if this Court reverses, then we'll have to go back, and then there's five more. If there's another grant, we'll be back here again. We could be back here at least one more time, and possibly two, three, a ruling. The other claims wouldn't, I mean, you argued that, in effect, the system's claim on which the District Court granted the plea has a completely different set of core operative facts than the claim that was asserted in the original federal petition. Correct. But if there are five other claims out there, I didn't know that, actually, wouldn't we have to do a separate analysis for those? You can do a core operative fact. It's an easy analysis to do. It's, you just look at the claim. Hypothetically, we agree with you in being clear that we have to apply this test. That might help. In that case, the District Court might see its way clear to saying, oh, if we do, if I apply the correct test, then I see that none of these claims relate back to the four claims mentioned in the original plea. None of the six claims that were before the Court relate back in any way to any of the four claims that were mentioned in the original plea. And so, if a ruling that this claim doesn't relate back, would be helpful, because then the District Court might have a hard time holding it. Maybe you can explain why you're trying to explain it. Sure, I just wanted to put that request in, and then I'll get to the arguments. On the statute of limitations issue, first of all, the claim doesn't relate back. Mayo v. Felix makes clear that you need a common core of operative facts. It decided, do we want a sort of loose interpretation of 15C for habeas cases, and relation back, or do we want a more narrow one, et cetera, a more narrow one. The common core of operative facts, the four claims mentioned in the original pleading were two sentencing claims, and an effective assistance of trial counsel claim, but although the District Court and the attorney in the brief didn't mention it, this was ineffective assistance of trial counsel for failing to investigate and raise a defense. So it isn't anything to do, it isn't a generalized and effective assistance of trial counsel. It isn't ineffective assistance of trial counsel for failing to challenge competency. It's a specific ineffective assistance of trial counsel for failing to raise a defense. Ineffective assistance of appellate counsel, that's a different claim, and then there's a Brady claim. None of those claims then appear in the ultimate supplemental petition that ends up being filed that actually presents the claims from the District Court. So there is no common core of operative facts. The District Court really didn't point out what facts were operative facts, it just simply said ineffective assistance of counsel, and this is ineffective assistance of counsel. The claims have the same name, but again, it's not the name of the claim, it's the core of operative facts. The operative facts here are petitioner's mental health, his history of mental health, his adjudications of incompetence and competence, his behavior at trial. Those are the operative facts here, and none of those facts, and there were actually no facts mentioned in the original pleading. The Ambulance Brief says that the facts are simple, straightforward, uncontroverted, and clearly alleged in the original pleading. They were not alleged in the original pleading, there weren't any facts. It wasn't anything about all this strange behavior in court? No, the original pleading, nothing, nothing. It was a motion for equitable tolling, so it laid out sort of the legal argument about why he was entitled to equitable tolling. There was a brief in support, which did the same thing, and then there was an affidavit that said, please let me go back to state court, and here are the claims that I'd like to raise. No explanation of what those claims are, just the names of just sort of four sentences. So, I think there's no basis to time dilation back here. Moving to equitable tolling, the district court abused its discretion in rewarding equitable tolling here, where the petitioner hadn't shown a penalty to it. The district court found equitable tolling based on mental incompetence, except the district court, the only facts that the district court found to support that were that he had mental issues throughout his trial, appellate, and post-conviction proceedings. Those are entirely- But didn't the court have a number of evaluations to look at in supporting that determination? What did he specifically refer to those, not because there were some, four evaluations, right? There were four evaluations, that's correct. The first one was sort of a, it was basic, and it kind of said, he's not cooperating, I'm unable to formally evaluate him. He appears to be incompetent. So it's a very tentative finding of incompetence. The second one had much more time to stay with him, and said, it looks like he's faking, looks like he's malingering, looks like he is competent, and I'm finding him to be competent. The trial court, on the record, said, I find that persuasive, and I accept that. Didn't specifically say, I find it persuasive, the malingering finding, but it said, it did mention that this found him to be malingering, I found him to be competent, I find that persuasive, and I accept it. The third one was not a competency evaluation, but it also did find him to be malingering. It noted that there have been- So are you saying that the court's reliance on that mental health factor, to support his equitable total determination, was not supported by the record, or was just not sufficiently analyzed or set out in the court's ruling, which one? I think the biggest, I mean, we've got multiple arguments. The main argument, it's hard to say, I mean, there's two main ones. The first one that I was going to present was that the timeframe is irrelevant, right? He says, during trial, appellate, and post-conviction pleadings, none of those run against the statute of limitations. During trial and appellate, the statute of limitations hasn't begun to run. During post-conviction pleadings, he has statutory tolling. He needs to show mental incompetence during the time that the statute of limitations is actually running, and the district court made no findings on that point, and I don't believe Anthony's brief makes any evidence on that point. Second. There also was no evidentiary hearing or evaluation to address that time period, from what I understand. That's correct, and it's worth noting that the heinous incompetency standard is a little bit different than the trial incompetency standard, but they're slightly different standards, another thing that the district court didn't address. I think the second main thrust as to sort of where the district court error is, that these are sort of very general findings of, well, he has mental issues, he has mental problems, he has mental illness. That's not enough, that's not incompetency. He needs to show incompetency, and he also needs to show causation, that the incompetency caused him to fail to timely file, and I think the biggest fact in our favor on this point is that he did timely file a pro-safe pleading in the federal district court. The initial motion for equitable tolling, which the district court construed as a protective habeas petition, was pro-safe filed by him timely. How is it true that he did, in fact, file this exact same claim of ineffective assistance, i.e., the incompetency, you should have asked for another examination claim. Is it true that he filed that same claim in state court two months before he filed the federal habeas petition? I don't recall the exact timing of when that, I think that's correct. So, I mean, I would assume he was competent. Right, well, he was certainly filing other pleadings pro se in state court. I don't think that he filed that, this claim pro se in state court at that time. I think that when he finally raised this claim, well, he raised it on direct appeal by counsel, and then he raised it again on a motion for relief from judgment, but I believe he had counsel at that point as well. But he was certainly filing pro-safe pleadings in the state court that were, I mean, they weren't letter perfect, but they were coherent. They approached colorability in terms of the issues. You could read them, you could understand what he was saying. They were coherent legal arguments. And they were filed pro se during this relevant time period and before and after. And I think the biggest one, of course, is the claim, is the actual habeas petition, or the motion for equitable toll and construed as a habeas petition that entirely filed a pro se. I don't know how you can support a claim that he had mental incompetence that caused him to be unable to pro se file his claim, but he pro se filed other claims. So, for those reasons, I know that abuse of discretion is a high standard, but I think the district court abused its discretion in finding relation back because there is no common ground. In fact, it abused its discretion in awarding equitable toll and there are no facts to support it. If this court wishes to address the merits, I think that under the multiple layers of deference that are afforded, which the district court did not address, you really have to find not only, well, trial counsel should have been on alert by the petitioner's bizarre behavior that he could have raised a question here. I think even that's arguable given that trial counsel already had these assessments that showed that he was configuring it and that everyone knew that he was putting on a show. But even if you credit that, that's not enough. You have to show not only that trial counsel should have done something, but that no competent counsel could have made a decision to do otherwise. And even if you find that, you then have to also say that no fair-minded jurist could disagree with you on that point, that no fair-minded jurist could hold that any competent counsel could decide that on these facts, having multiple findings of malingering, or one finding of competency, two findings of lack of criminal insanity, that you could decide it does not make sense to ask the trial court for another assessment here. And then you also have to be prejudiced which, when we cited the Dubrual case, which came out last May, and I know Judge Clay that you authored that, so I know that you're familiar with it. And I think that the prejudice analysis on pages 881 to 82 of that opinion is fairly on point. The facts, obviously the facts are not going to match up exactly, but you've got, I mean, how, you have a presumption under state law of competence, you have a finding of competence, you have multiple findings of malingering, how can the petitioner meet his burden of showing that if counsel had asked for another hearing, that A, the trial court would have granted it, and B, that it would have shown him to be incompetent? It's a burden he hasn't met. So on the timeliness issue, and on the merits of the claim, we respectfully request that this court reverse  and unless the court has any other questions. Thank you. Thank you. Hey, please, court. My name is Will Komorski, and I'm appearing on behalf of the petitioner in this case, Mr. Watkins. With respect to the first issue raised by counsel, whether or not the subsequent petition relates back to his initially filed petition. As this court is aware, this initial petition was filed by Mr. Watkins himself, pro se. And as we know, we cannot hold pro se individuals to standards of lawyers in how to specifically draft particular issues. And I think that was the key thing that was found by Judge Tarnow in this case, is that a common core of operative facts isn't necessarily specific facts. It relates back to the claim. And the claim was, in effect, of assistance of counsel that he raised, although he did make specific references to lack of raising of defendants and so forth. It doesn't change the fact that it's very difficult for a defendant himself to realize that he was incompetent at the time, and that this lawyer should have challenged his own wrongdoings. I mean, I understand your point, but the problem with it is the law does apply to pro se parties. Understand, and our court has repeatedly held that just because you raise a, quote, ineffective assistance of counsel claim, that doesn't mean that you preserve every potential theory of ineffective assistance. It depends on the specific theory that you're advocating. Basically, it depends on the core operative facts of that theory. And if you didn't raise a particular theory, say, in state court, then it's going to be procedurally defaulted when you come here. By the same token, if he didn't raise anything having to do with a, you should have asked for a fifth competency exam theory in his first petition, then, I mean, why doesn't our case law preclude us from saying this different theory, the two different theories don't relate to each other? A couple things. The issue was raised in state court, as indicated. Specifically, raised the way it has been raised in these seven habeas petitions before he filed his federal petition, is that correct? That is correct. And that was raised by counsel. He was actually represented by counsel at that time, State Appellate Defender's Office. And it wasn't until the Supreme Court denied the, and just to get back to that point, there was really no ruling on that because it was filed as an application for leave to appeal, and the Court of Appeals, Michigan Court of Appeals, didn't address the merits. They just said, in an order, denying it for lack of merit. So again, it was raised in state court, and when Mr. Thompkins filed his initial petition, he was under the mistaken belief that he was trying to save the petition time and requesting equitable tolling. That was what he actually thought. The judge treated it as a petition because he also raised, as counsel indicated, in his brief, certain issues that he thought should be readied in federal court. So Judge Tarnow treated it as a petition, but Mr. Watkins was under the mistaken belief that he was actually trying to save his time so he would not be procedurally and statutorily barred from coming into federal court. So I think the fact that he did raise ineffective assistance of counsel after it had already been specifically raised in state court that counsel was ineffective for failing to address his competency and raised another competency evaluation, I think that's sufficient for this court to rely on the petition that was originally filed by Mr. Watkins to then allow the second petition to come in under the case of prevention. In case you would cite a student that says, basically, when you have a supplemental petition that has theory B and the original petition has theory A, but they filed a theory B claim in state court that the two relate back to federal claims. I don't have a specific case that says that, no. Admittedly, I do not. But as we indicated before and as Judge Tarnow has indicated, it's the fact that it's relating back to the claim as opposed to the specifics that it said that that's not what the law says. I guess you do agree that the supplemental petition did assert a ground for relief, not fully asserted in the first petition. I reckon they're not the same issues. I'm sorry, I didn't understand. I'm saying, in order for this to relate back, has to be the same claims, or she's asserted in there. And I'm saying that what was asserted in the supplemental claim is not identical to what was asserted in the first one. That's true, it's not identical. Okay, so, then we should have a problem there with relation back. Well, I don't think it needs to necessarily be identical. It just has to share a common core of facts. And as Judge Tarnow indicated in his opinion, the fact that ineffective assistance in dealing with the affinity to request a competency evaluation does share a common core of facts to what Mr. Watkins was originally arguing in his initial petition, that he was not effective representation based on affinity to raise a defense, and so forth. And I think this court can take the fact that Mr. Watkins, again, admittedly is a pro se defendant, that he did not know exactly how to raise these issues to preserve. Because again, he was under the impression he was trying to save his tolling period as opposed to actually being specific in the habeas petition issues that he was raising. Notwithstanding all that, there's nothing to keep the district court from performing the appropriate inquiry to determine that whether tolling was appropriate. Evidentiary hearing, or additional briefing, or whatever the judge needed. But it turned out that the judge didn't seem not to address the stricken prejudice, or whether the efforts were satisfied, or even whether the plaintiff was indeed incompetent during the time of issue. The judge didn't cover any of that, and didn't develop any of those matters in his opinion. So it seemed that the order was incompetent and granted by the district court. What did he say to all that? With respect to failing to address the actual cause, or strickland analysis, or are you referring to whether or not he addressed a certain instances? Well, he would have had to determine the prejudice of the strickland. He's required to do that as a part of the effort of deference inquiry. In order to perform that exercise, the judge would need to inquire as to whether he was actually mentally incompetent during the appropriate time frame. And even if he had to hold a evidentiary hearing, the judge didn't do any of that. He didn't even, not only didn't he go through any of those steps, he didn't even address the matter of effort of deference that would apply here. Well, I think he did, and the problem with deferring to the state department of that district. He didn't, I mean he couldn't do it because he couldn't, there was no factual development to arrive at a conclusion that the man was even mentally incompetent during the appropriate time frame. Well, I think Judge Tyler did make mention that appellate counsel, state appellate defender's office did get a hold of Mr. Watkins' medical records, which did show that he was diagnosed with a psychotic disorder that he was currently being treated for. But I think when you look at the record itself, this goes way beyond somebody who's faking what counsel has indicated. And there are three people, doctors who evaluated him said it's not just counsel for the state. Well, they all said he's malingering. You know, the Minnesota Personality Inventory, it's designed to smoke this stuff out. And he rang that bell pretty loudly. There were only two competency evaluations. The first one, he was found incompetent. The second one, he was found to be competent but malingering. This is way back when the case began. Now, as we all know, competence can come in and out with people who are severely mentally ill. So if the defendant does regress back into incompetence, it's incumbent upon the attorney representing him to request a fourth, fifth, sixth, eighth evaluation. He requested an independent evaluation of the client's competence. And it was apparently done by Dr. Clark. And as far as the record shows, Dr. Clark said the same thing as everybody else. Dr. Clark evaluated him for criminal responsibility. That's different, that's not competence. Criminal responsibility deals with what his mental state was at the time of the crime itself and whether he could form specific intent. He did not do, at least as far as we can see from the record, do an independent evaluation as to competence. And I- Isn't that what defense counsel requested? Was there an evaluation of competence he got? He did, but there was no follow-up as to competence. Well, we don't have a report, right? Correct. I mean, so counsel asked for it. I mean, is it really such a stretch to presume that that is what the expert evaluated, even though we don't have a report? I think it is a stretch because we can't assume something we don't know. We don't have a report, as Judge Tarnow indicated, it was not included in the Rule 5 material. And even beyond that, even if Dr. Clark had found him to be competent, as we can see as the pretrial stage continued, counsel for Mr. Watkins indicated that I cannot communicate with this man. There's something clearly wrong with him. I cannot form a defense. I don't know what witnesses we're going to call. I don't know what I can do because I cannot communicate with him. And it was at that point that Watkins stood up and said, I'm going to represent myself. I have a law license. He clearly did not know what was going on. When you see his actions at trial in front of the jury, where he's shouting that he's guilty, and they should find him guilty and restrain him, and he demanded being presented to the jury in his jail clothes as opposed to civilian clothes, and even his comments at sentencing, this is clearly not somebody that's faking. This is somebody that's... Well, you know, I mean, that's your own mental evaluation. Judge Tarnow conducted his own mental evaluation in the opinion, but three, actually four experts looked at him and looked at him based on very similar, seemingly not sane outbursts, and they said he's malingering. And so if we're going to apply epidemics here, how in the world have you shown prejudice that, in fact, if he asked for the fifth evaluation, that that evaluator, number one, is going to say, disagree with everyone else, and number two, that the state judge is going to agree with that new opinion? Because we only have evidence that there was only one evaluation based on criminal responsibility, that he was malingering. Three and four are even admitted by counsel of his brief dealt with criminal responsibility. How do you show that he was incompetent, that you're going to get that different opinion? I don't know how you show that. Based on his own attorney's representation to the court, this was before they even went to trial, that he cannot communicate with them, that he has no idea what witnesses he wants to call, he has no idea what defense he's going to advance, because he cannot communicate with his client. At that point, it was incumbent upon him to request that additional competency evaluation, because there's a very strong probability that if he was malingering, or if he had been restored to competence based on maybe meds they were giving to him in the jail, he has reverted back. And that's what representation is all about. That's just based on lawyer evaluation of this record. And Judge Torno's mental evaluation is that. And that's there, and also his own lawyer's failure to ask that it be reviewed again. Also, I want to go back to this close to the beginning, and ask you this. If we determine that your amended petition does not relate back to the original petition, and that equitable tolling does not apply, then do we have to dismiss your petition? I don't think so, because as counsel indicated, there were four issues raised by Mr. Watkins himself in his initial petition. Judge Torno granted this petition based on the one that we raised in the subsequent petition. So if this court hypothetically reverses Judge Torno on his ruling, it would have to go back in front of Judge Torno to address the additional issues that Mr. Watkins raised. Counsel, it would seem that Judge Torno didn't comply with his data versus Scott's case. That sets out the requirements for the federal petition. We must follow to demonstrate that he's mentally incompetent, and his mental incompetence causes his data to comply with required timeframes. I know you're familiar with that case, because you cited it in your brief. It says that the district court should determine if factual allegations are sufficient, and if evidentiary hearing is required, and other requirements that it discusses, that was set forth there. And it would seem that Judge Torno did not comply with this data case. How would, if you wanted to, ruling in your favor, how would you go around the judge's data to observe the requirements of that case? I would suggest that this court send it back to Judge Torno with instructions to do that. All right, I see that your red light is on. Oh, okay. Thank you. Just a few points, Your Honor. I think that, I just heard my brother counsel say that there were four things raised in the original dating, and then there were six raised in the supplemental petition, and those are all in front of Judge Torno. I respectfully disagree. I think the four claims raised in the original pleading are not in front of the district court. They were never developed. There was never any argument made on this. They were never raised to the state court, to my knowledge. If they are before Judge Torno, they're unexhausted or procedurally faulted. They're abandoned by lack of argument. And in fact, Judge Torno, in his order, well, first of all, in our response, as we always do in our template, we say we understand the petition to be raising the following claims. We listed one, two, three, four, five, six, just the ones in the supplemental petition. And then Judge Torno, in his order, oh, sorry, I've got to hear, says petitioner seeks relief on the following claims, and it's just the six in the supplemental. He doesn't mention the four originals. So I don't think there's any need to remand it back for those four original claims mentioned in the original pleading, only the six in the supplemental. And again, because none of them relate back to those original four, they're all untitled, they should be borrowed. As far as the point that was being discussed early on in Brother Counsel's argument, yes, the original was a pro se pleading entitled to a liberal construction. I think that's the only reason it gets construed as a petition in the first place. I mean, if you look at the motion and the brief, there are no claims raised. If it's only the affidavit that even mentions the claims, if that had been filed by an attorney, we might be making harsher arguments. We don't have a problem with construing that as a petition. But this court held, in a published opinion, that neither the Supreme Court nor other courts have been willing to abrogate basic pleading essentials that pro se suits. I cite Wells v. Brown, 1989 case from this court. This is a basic pleading essential. What is your claim? I don't think there's anything more basic than that. And the claim here, I mean, Judge Dowd, you said it's not identical. We're not even asking for identical, just related. It's not related. So for that reason and all the others, we ask for reversal, and I'd be glad to answer any other questions, otherwise I have time to stop. All right. Thank you, Your Honor. It is submitted. Thank you for your arguments. We'll be moving on to other cases for the day, court members.